UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARIA M. ALVAREZ-BROOKINS,

    Plaintiff,

  v.                                                 Case No. 23-CV-1636-SCD

MARTIN J. O'MALLEY,
   *Commissioner of the Social Security Administration*,

    Defendant.

---

### DECISION AND ORDER

---

Maria Alvarez-Brookins applied for social security disability benefits based primarily on mental impairments, as well as migraine headaches, obesity, asthma, and a sleep disorder. After the state agency reviewed her medical records, Alvarez-Brookins started complaining to providers about hypermobility in her joints. She was also hospitalized for shortness of breath and chest pain after suffering a blood clot, respiratory failure, and a heart attack. Relying in part on the state-agency findings that Alvarez-Brookins could still work, an administrative law judge denied the claim for benefits. In reaching that decision, the ALJ considered Alvarez-Brookins' new impairments, but he did not seek an updated opinion from a medical expert.

    Alvarez-Brookins seeks judicial review of the ALJ's decision, arguing that the ALJ improperly relied on the outdated state-agency findings, did not properly evaluate the state-agency findings, and erred in assessing Alvarez-Brookins' subjective allegations about her impairments. I agree that the record contained new and significant evidence that reasonably could have affected the state-agency findings. I also agree that the ALJ erred in evaluating those findings and in assessing Alvarez-Brookins' alleged symptoms. Accordingly, I will

reverse the decision denying Alvarez-Brookins disability benefits and remand the matter for further proceedings.

## BACKGROUND

In March 2021, Alvarez-Brookins applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively. *See* R. 15, 243–49.[1] She alleged that she became disabled on March 1, 2020, due to post-traumatic stress disorder, migraines, depression, anxiety, obesity, asthma, and a sleep disorder. *See* R. 262–71. Alvarez-Brookins reported that she lived with family and that she helped take care of their cats; she could tend to her personal care needs; she could make simple meals like sandwiches or frozen dinners; she helped around the house by filling water pitchers and doing laundry; she shopped in stores once a week; she enjoyed reading, crafting, writing, listening to music, and playing video games; and she regularly attended church. *See* R. 280–87.

The state agency charged with reviewing the applications on behalf of the Social Security Administration first denied Alvarez-Brookins' claim in August 2021. *See* R. 100–15. Marc Young, MD, reviewed the available medical records and found that Alvarez-Brookins could perform light exertional work[2] if she avoided concentrated exposure to pulmonary irritants and hazards like machinery and heights. R. 103, 105–06, 111, 113–14. As support, Dr. Young explained that Alvarez-Brookins had only one documented asthma exacerbation, that her migraines had stabilized with medication changes, and that her latest body mass index was over 56. R. 106, 114.

---

[1] The transcript is filed on the docket at ECF No. 10-2 to 10-10.

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

In January 2022, Alvarez-Brookins was referred to physical therapy after complaining about pain in her left foot and hip. *See* R. 659–64. She told her physical therapist that she felt like she dislocated her hip back in December and that she always was able to pop her joints in and out of place. R. 1199. According to the physical therapist, that subjective history was consistent with significant hypermobility (i.e., double-jointedness). R. 1201. On examination, Alvarez-Brookins exhibited deviated mobility in her ankles and hip joints. R. 1201–03. Subsequent physical therapy notes document "significant" joint hypermobility, especially in the feet and ankles. *See* R. 1214, 1217, 1219. Eventually, Alvarez-Brookins was referred to genetic testing for Ehlers-Danlos syndrome—an inherited connective tissue disorder characterized by joint hypermobility (among other symptoms). *See* R. 643–49.

While the workup for hypermobility syndrome was underway, in May 2022, the state agency again denied Alvarez-Brookins' disability claim. *See* R. 116–34. Like Dr. Young, the physician who reviewed the medical records at the reconsideration level, Pat Chan, MD, found that Alvarez-Brookins could perform light work with environmental limitations. R. 118–21, 127–30. As support, Dr. Chan referenced a normal vascular exam and noted that Alvarez-Brookins walked with a normal gait and was able to get on the exam table without difficulty during a recent doctor visit.

In August 2022, Alvarez-Brookins went to the emergency room complaining about shortness of breath and sharp pain in her chest. *See* R. 887–1159. She said that her symptoms began a few days prior, but they worsened significantly after a thirteen-hour drive from Wisconsin to Ohio. R. 902. Alvarez-Brookins was diagnosed with acute pulmonary embolism (i.e., a blood clot that blocked an artery in her lungs), acute hypoxemic respiratory failure, and type 2 myocardial infarction (i.e., a heart attack). R. 893. The emergency room physician

3

indicated that the incident likely was provoked by Alvarez-Brookins' use of an oral contraceptive and morbid obesity and was exacerbated by the long car ride. R. 905. Alvarez-Brookins had a catheter placed in her pulmonary arteries, was prescribed blood thinners, and was discharged from the hospital several days later when her condition improved. R. 905–06, 943–44. Treatment notes from a follow-up appointment back in Wisconsin a few weeks later indicate that most pulmonary embolism patients do not suffer a recurrence, though they may be a higher risk. R. 1187. Alvarez-Brookins was advised to start moderate exercise like walking or swimming.

A few weeks later, Alvarez-Brookins underwent a functional capacity evaluation. *See* R. 1263–78. During the evaluation, she wore her left arm in a sling and reported that she had injured a muscle in the left side of her chest five days prior. R. 1263. Alvarez-Brookins was able to sit for over an hour and stand for thirty minutes without pain indicators. R. 1267. However, she became short of breath with walking just 150 feet and stopped the walking exercise after about four minutes, claiming pain in her chest from breathing deeply. R. 1267, 1271. Alvarez-Brookins told the evaluator that she wouldn't normally have trouble with functional tasks and attributed her limitations to her recent chest injury. R. 1264. Accordingly, the evaluator determined that the evaluation was not an accurate representation of Alvarez-Brookins' functional capacity when she is at baseline. Alvarez-Brookins did report, however, that her hypermobility frequently causes injuries that leave her unable to work.

In October 2022, Alvarez-Brookins had a hearing before an ALJ. *See* R. 56–99. Alvarez-Brookins, who was represented by counsel at the hearing, was twenty-nine years old at the time and lived with her parents. R. 63. She said she worked seasonally performing clerical duties for a tax preparation service from 2013 to 2017. R. 65–67. According to

4

Alvarez-Brookins, she couldn't work anymore due to difficulty breathing, joint issues, and mental health problems. R. 67–75. She estimated that she could stand and sit, respectively, for about an hour or an hour-and-a-half before needing to change positions and that she could walk only two blocks before needing to rest. R. 75. Alvarez-Brookins told the ALJ that she didn't have any issues with personal care; that she sometimes was able to cook her own meals (if her joints were cooperating), perform household chores, and shop in stores (if she wasn't alone); and that she enjoyed crocheting, sewing, writing, and playing online games with friends. R. 76–77.

Alvarez-Brookins' mother, Melissa Alvarez-Krieger, also testified at the hearing. *See* R. 78–82. Alvarez-Krieger testified that her daughter lived with her and that she'd personally witnessed a significant decline in her daughter's physical and mental health over the last two years. R. 79–81. Alvarez-Krieger said her daughter used to be very independent; however, she began getting injured frequently, and she couldn't handle grocery shopping anymore. According to Alvarez-Krieger, her daughter couldn't work full-time due to issues with her joints, lungs, and mental health. R. 81–82.

In January 2023, Alvarez-Brookins had another hearing with the ALJ. *See* R. 34–55. At the hearing, the ALJ found that Alvarez-Brookins did not have any past relevant work given the earnings levels of her prior jobs. R. 43. A vocational expert testified that a hypothetical person with Alvarez-Brookins' vocational profile could work as a collator operator, a mail clerk, and a merchandise marker if she were limited to a restricted range of light exertional work. R. 46–47.

In February 2023, the ALJ issued a written decision finding that Alvarez-Brookins was not disabled. *See* R. 12–33. The ALJ considered the disability applications under 20 C.F.R.

5

§§ 404.1520(a) and 416.920(a), which set forth a five-step process for evaluating DIB and SSI claims. *See* R. 15–28. Alvarez-Brookins' date last insured is June 30, 2020. R. 17. At step one, the ALJ determined that Alvarez-Brookins had not engaged in substantial gainful activity since her alleged onset of disability. R. 18. The ALJ determined at step two that Alvarez-Brookins had five severe impairments: obesity, hypermobility of joints, asthma, depression, and PTSD. The ALJ determined that Alvarez-Brookins' pulmonary embolism and myocardial infarction did not significantly limit her ability to do basic work activities, finding that those were acute conditions and that any residual effects had been treated with blood thinners. R. 18 (citing Exhibits 11F; 13F). At step three, the ALJ determined that Alvarez-Brookins did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in the social security regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., "the listings"). R. 18–20.

Prior to step four, the ALJ assessed Alvarez-Brookins' residual functional capacity—that is, the most she could do despite her physical and mental limitations, *see* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ determined that Alvarez-Brookins could perform light work with several postural and environmental limitations: frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no work at unprotected heights; occasional work with pulmonary irritants; and frequent work on moving mechanical parts and with vibration. R. 21. The RFC also assessed several mental health restrictions.

In assessing that RFC, the ALJ considered the objective medical evidence, Alvarez-Brookins' subjective allegations, the medical opinion evidence, and the testimony of Alvarez-Brookins' mother. *See* R. 21–26. The ALJ noted that, prior to her alleged onset of disability,

6

Case 1:23-cv-01636-SCD   Filed 11/05/24   Page 6 of 15   Document 31

Alvarez-Brookins saw orthopedics for pain in her knee, foot, Achilles, and ankle. R. 21 (citing Exhibits 12F; 16F). The ALJ further noted that, in early 2022, a workup was done for hypermobility syndrome, R. 21 (citing Exhibits 7F; 12F), and that Alvarez-Brookins saw orthopedics for concerns of hypermobility with locking and dislocation of joints, R. 21 (citing Exhibits 12F; 16F). The ALJ observed that, during exams, Alvarez-Brookins exhibited tenderness to palpation, decreased strength, pain with movement, hip pain, and hyperextension to at least ten degrees both at the elbows and at the knees. R. 21–22 (citing Exhibits 7F; 12F; 16F). According to the ALJ, Alvarez-Brookins' treatment for her joint issues primarily consisted of medication, physical therapy, and a referral to rheumatology. R. 22.

As for the subjective allegations, the ALJ determined that Alvarez-Brookins' medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, according to the ALJ, Alvarez-Brookins' statements about the intensity, persistence, and degree of limitation associated with those symptoms could not reasonably be accepted as consistent with the evidence in the record. R. 22–23. The ALJ determined that the record failed to fully substantiate Alvarez-Brookins' allegations of disabling symptoms. The ALJ noted that, while Alvarez-Brookins reported some ongoing joint pain, during exams she exhibited intact sensation, intact reflexes, intact strength, normal motor, normal tone, normal gait, and normal station. R. 23 (citing Exhibits 2F; 4F; 9F; 13F; 15F). According to the ALJ, Alvarez-Brookins' symptoms improved with treatment, and her joint hypermobility was generally controlled with medication. R. 23. Finally, the ALJ determined that the record showed Alvarez-Brookins having better functioning than her allegations of disabling symptoms would indicate. R. 23. As support, the ALJ noted that Alvarez-Brookins was able to tend to her own personal care needs and tend to her activities of daily living, including

7

taking care of her pets, taking care of her children, attending church, preparing meals, doing housework, driving, shopping, managing her money, watching television, reading, crafting, writing, playing video games, handling her own medical care, and attending medical appointments. R. 23 (citing Exhibit 4E).

The ALJ also considered the opinion evidence and the testimony of Alvarez-Brookins' mother, Alvarez-Krieger. *See* R. 23–25. The ALJ found that the prior administrative medical findings of state-agency reviewing physicians Dr. Young and Dr. Chan were somewhat persuasive. R. 23–24 (citing Exhibits 3A; 4A; 5A; 7A). The ALJ noted that Dr. Young and Dr. Chan were highly trained providers and were familiar with the rules and regulations of disability determinations. The ALJ determined that their light-work finding was consistent with treating records documenting intact sensation, intact reflexes, intact strength, normal motor, normal tone, normal gait, and normal station. R. 24 (citing Exhibits 2F; 4F; 9F; 13F; 15F). However, according to the ALJ, additional postural limitations were warranted given the overall record and Alvarez-Brookins' hearing testimony. The ALJ found the opinions contained in the functional capacity evaluation report to be unpersuasive. R. 25 (citing Exhibit 18F). The ALJ noted that both Alvarez-Brookins and the evaluator claimed that Alvarez-Brookins was not functioning at normal capacity at the time; she was limited by a recent, acute chest injury. Finally, the ALJ found that Alvarez-Krieger's observations were "of limited persuasion as she lived with [her daughter] and was in a position to make [those] observations." R. 25.

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Alvarez-Brookins did not have any past relevant work. R. 26. Relying on the vocational expert's testimony, the ALJ determined at step five that Alvarez-Brookins could

8

still work as a collator operator, a mail clerk, and a merchandise marker. R. 26–27. Based on the step-five finding, the ALJ determined that Alvarez-Brookins was not disabled at any time from her alleged onset date through the date of the decision. R. 27.

The Social Security Administration's Appeals Council subsequently denied Alvarez-Brookins' request for review, R. 1–6, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).

In December 2023, Alvarez-Brookins filed this action seeking judicial review of the Commissioner's decision denying her claims for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 6, 7. Alvarez-Brookins filed a brief in support of her disability claims, ECF No. 15; the Commissioner filed a brief in support of the ALJ's decision, ECF No. 26; and Alvarez-Brookins filed a reply brief, ECF No. 30.

**LEGAL STANDARDS**

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

9

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "When reviewing the record, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, the court must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Alvarez-Brookins seeks remand for a rehearing, arguing that the ALJ committed several fatal errors in his decision. Her main argument is that the ALJ erred in relying even partially on the outdated findings of the state-agency reviewing physicians. According to Alvarez-Brookins, Dr. Young and Dr. Chan did not have the benefit of the latest medical records concerning Alvarez-Brookins' diagnoses of joint hypermobility, pulmonary embolism, and myocardial infarction. Alvarez-Brookins insists that the ALJ was not qualified to make his own determination on the significance and functional impact of those new impairments, and she criticizes the ALJ for not obtaining an updated expert medical opinion.

At the hearing level, the ALJ is responsible for assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). The ALJ must consider all the relevant evidence in the record, including the prior administrative medical findings of state-agency medical consultants. *See* 20 C.F.R. §§ 404.1513a(b), 404.1545, 416.913a(b), 416.945. The ALJ also can

10

ask for medical evidence from an expert. *See* 20 C.F.R. §§ 404.1513a(b)(2), 416.913a(b)(2). Although the decision to consult an expert is discretionary, the Seventh Circuit has held that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)).

It's undisputed that the state-agency reviewing physicians were unaware of Alvarez-Brookins' latest diagnoses. Dr. Young issued his findings in August 2021, *see* R. 102–15—well before Alvarez-Brookins first complained about joint hypermobility in February 2022, *see* R. 1199–1204. Although Dr. Chan issued his findings in May 2022, he didn't mention hypermobility anywhere in his notes. *See* R. 116–23, 125–33. Even if Dr. Chan did consider that diagnosis without mentioning it, he did not review or have access to subsequent treatment notes documenting "significant hypermobility." *See* R. 726, 773, 1199–1204, 1214, 1217, 1219, 1264. Alvarez-Brookins wasn't diagnosed with pulmonary embolism and myocardial infarction until August 2022, *see* R. 887–1159—well after both physicians issued their findings. (The ALJ had hearings with Alvarez-Brookins in October 2022 and January 2023 and issued his decision in February 2023.)

Whether these new medical diagnoses are "significant" or "reasonably could have changed" the reviewing physicians' findings is a closer call. The ALJ essentially determined at step two that Alvarez-Brookins' pulmonary embolism and myocardial infarction were acute conditions that wouldn't have any lasting effects. *See* R. 18. There's some evidence in the record to support that finding. The emergency room physician stated that the event likely was triggered by Alvarez-Brookins' use of an oral contraceptive, obesity, and long car ride, R. 905–

11

06, and subsequent notes indicate that most patients do not suffer recurrence, R. 1187. However, those same notes also indicate that Alvarez-Brookins was higher risk, which seems especially true given her other health issues and potential family history of blood clots. Moreover, Alvarez-Brookins testified at the administrative hearing that she still struggled to breathe and that she was told she'd likely have another pulmonary embolism if she didn't take strict precautions. R. 68–70. It's therefore unclear if these impairments would result in ongoing limitations not already accounted for by the reviewing physicians' RFC findings.

It's also unclear whether Alvarez-Brookins' joint hypermobility would have changed the reviewing physicians' findings. Although the ALJ found hypermobility to be a severe impairment and mentioned the workup for hypermobility syndrome in early 2022, *see* R. 18, 21–22, there's some evidence suggesting he failed to appreciate the nature and location of the condition. For example, while the ALJ cited Exhibit 16—the physical therapy notes—he did not acknowledge that Alvarez-Brookins' physical therapist said she had "significant" hypermobility or the therapist's finding that the condition primarily affected Alvarez-Brookins' feet and ankles. *See* R. 1199–1204.

If this were the only issue with the ALJ's decision, I might be inclined to affirm it; but it isn't. Alvarez-Brookins testified that the joints in her knees, ankles, elbows, and wrists "don't want to work" and that she could walk only two blocks before needing to rest. R. 68, 75. The ALJ provided three reasons for discounting Alvarez-Brookins' alleged symptoms, but each one lacks support in the record. *See Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) (noting that reviewing courts "will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is 'patently wrong, which means that the decision lacks any explanation or support'") (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)).

First, the ALJ determined that the record did not fully substantiate Alvarez-Brookins' allegations of disabling symptoms, finding that her symptoms "improved with treatment." R. 23. However, the only example of improvement the ALJ cited concerned Alvarez-Brookins' hip pain. R. 23 (citing Exhibit 16F). The ALJ did not cite—and I haven't found—any evidence suggesting that Alvarez-Brookins' other joint issues improved with treatment. After the hip pain subsided, Alvarez-Brookins continued to exhibit alignment issues with her legs and feet, and she reported her ankles giving out when trying to do her at-home exercises. *See* R. 1214, 1218.

Second, the ALJ determined that Alvarez-Brookins' joint hypermobility was "generally controlled with medication." R. 23. The ALJ did not cite a single record in support of that finding. What's more problematic is that the record does not reflect Alvarez-Brookins being prescribed any medication for her hypermobility, let alone that medication controlled her symptoms. Her treatment consisted of physical therapy, and she was referred to a geneticist for additional testing. *See* R. 643–49, 1199–31.

Third, and finally, the ALJ determined that Alvarez-Brookins' reported daily activities suggested better functioning than her allegations of disabling symptoms would indicate. R. 23. However, the ALJ simply listed several activities without explaining *how* they were inconsistent with Alvarez-Brookins' alleged symptoms. The Seventh Circuit has repeatedly found that to be reversible error. *See, e.g.*, *Cullinan v. Berryhill*, 878 F.3d 598, 603–05 (7th Cir. 2017); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence."). Moreover, the alleged inconsistency isn't obvious. The ALJ said Alvarez-Brookins took care of her children; she doesn't have any. *See* R. 243–44. The ALJ noted that Alvarez-Brookins prepared meals,

13

performed housework, and shopped; however, he failed to acknowledge that Alvarez-Brookins testified her joint issues impacted her ability to cook and other issues limited her ability to clean and shop in stores. *See* R. 76. The other activities the ALJ listed—taking care of pets, attending church, driving, managing her money, watching TV, reading, crafting, writing, playing video games, and attending medical appointments—are largely sedentary; they do not appear inconsistent with an alleged difficulty with prolonged walking or standing.

The ALJ committed two other, albeit minor, errors. The ALJ determined that the reviewing physicians' light-work finding was consistent with treating records showing intact sensation, intact reflexes, intact strength, normal motor, normal tone, normal gait, and normal station. R. 24. However, the ALJ never addressed the objective medical evidence and supporting explanations presented by the reviewing physicians. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The failure to address the supportability factor constitutes legal error, *see Grosenick v. Comm'r of Soc. Sec. Admin.*, No. 21-CV-1276-SCD, 2023 WL 2473954, 2023 U.S. Dist. LEXIS 41451, at *13–15 (E.D. Wis. Mar. 13, 2023), and the Commissioner doesn't argue this error can be overlooked. The ALJ also didn't provide a logical reason for finding the observations of Alvarez-Brookins' mother to be of limited persuasion. *See* Social Security Ruling 16-3p, Policy Interpretation Ruling, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, 2016 SSR LEXIS 4, at *17–18 (Mar. 16, 2016), revised 2017 WL 5180304 (Oct. 25, 2017) (explaining that ALJs will consider any personal observations of the claimant made by non-medical sources, like family and friends, "in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file"). The only

analysis the ALJ offered—that Alvarez-Brookins' mother lived with her and was in a position to make those observations, *see* R. 25—was actually a reason to credit the mother's testimony.

## CONCLUSION

In sum, the ALJ erred in relying on the state-agency reviewing physicians' outdated findings that Alvarez-Brookins could perform light work with environmental limitations. The ALJ also reversibly erred in failing to address the supportability factor concerning the state-agency findings, and the ALJ's assessment of Alvarez-Brookins' subjective allegations lacks support in the record. Accordingly, for all the foregoing reasons, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** this action to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 5th day of November, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge